# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF MISSISSIPPI
### EASTERN DIVISION

JONI LOFTON                                                          PLAINTIFF

v.                                                   CIVIL ACTION NO.1:10CV282-SA-DAS

CITY OF WEST POINT, MISSISSIPPI                                      DEFENDANT

**LEAD CASE**
**CONSOLIDATED WITH**

SHASTA HEATH PLUNKETT                                                PLAINTIFF

v.                                                   CIVIL ACTION NO.1:10CV316-SA-DAS

CITY OF WEST POINT, MISSISSIPPI
and JASPER PITTMAN, in his individual
capacity                                                            DEFENDANTS

## MEMORANDUM OPINION

Presently before the Court are two Motions for Summary Judgment [42, 33]. The first Motion [42] filed by Defendants, the City of West Point and Jasper Pittman, addresses claims asserted by Plaintiff Shasta Plunkett. The second Motion [33] filed by Defendant, the City of West Point, is directed at claims asserted by Plaintiff Joni Lofton. After reviewing the motions, responses, rules, and authorities, the Court finds as follows:

## FACTUAL BACKGROUND

### *Plaintiff Shasta Plunkett*

Shasta Plunkett ("Plunkett" or "Plaintiff Plunkett") is a Caucasian male formerly employed by the City of West Point, Mississippi's Water and Light Department. In either 1998

or 1999,[1] Plaintiff Plunkett was hired by the City of West Point as a meter reader. According to Plunkett, he was promoted to lineman a year later and, in 2008, he became the lead serviceman. At this time, Plunkett reported to then- Superintendent of the City of West Point's Water and Light Department, Paul Young (Caucasian). Plunkett asserts that he was never written up or disciplined while working for the City and, according to Paul Young, "Shasta was doing an outstanding job for the electric office, for the electric department in general. Always had . . . He was very conscientious in his work. He had good work ethics. He was a valuable employee for the water and light department." In 2008, Plunkett, along with Plaintiff Joni Lofton, was apparently placed in charge of "billings and collections." Plunkett contends that this job was previously done by Paris Calvert (African American) and Rhonda "Collins" Hibler (African American). According to Plunkett, Calvert and Hibler were not disconnecting the electricity of customers who did not pay in accordance with the City's TVA contract. Plunkett maintains that once he and Lofton were put in charge of collections, "there would be four to [five hundred] people in a day to be disconnected on the 10th, 20th, and 30th of every month[,]" and around eighty percent of the disconnects were allegedly African-American households.

In October 2009, Paul Young retired from his position as Superintendent due to alleged "conflicts" with the Board. These conflicts appear to have been tinged with racial overtures, as Paul Young testified about African-American members of the Board, as well as African-American customers, complaining about their electricity being disconnected due to delinquent payment. Young further testified that the newly-elected Board and the mayor made it more

---

[1] In Plunkett's complaint, he alleges that his employment with the City commenced on October 15, 1998. However, in his brief in opposition to summary judgment, he contends he was hired in 1999. This disparity is not material to the instant action.

difficult for the electric department to fulfill its job duties. According to Plaintiff Plunkett, the African-American Board members claimed they were "having a lot of complaints from black people for being cut off on disconnects." Plunkett maintains that some of the complaints were from the African-American Board members themselves, as they—along with the mayor— allegedly had their electricity shut off for not paying their bills.

After Paul Young retired, Plunkett contends that Young recommended to Randy Jones that he be promoted to Superintendent. It appears that Randy Jones (Caucasian), the City's Chief Administrative Officer, initially acted as Superintendent for the Department but, in 2010, Plunkett was appointed to the position of Interim Electric Superintendent. Nevertheless, Plunkett's work situation also apparently worsened in 2010, as Plunkett filed a charge with the EEOC on February 4, 2010, alleging discrimination based on his race. This charge of discrimination alleges, in pertinent part, as follows:

> I have been employed by the West Point Electric Department for eleven years . . . I had no work related problems until a black person, Mr. Jasper Pittman, came to serve on the Board of Aldermen in the Fall of 2008. Mr. Pittman would not pay his own electrical bill on time and would also try to keep me from taking actions against black constituents who do not pay their electric bill. My problems were exacerbated when a black majority came to the Board of Alderman and essentially supported Mr. Pittman's position that aldermen were privileged persons and should not have to pay their bills, and should also be able to demand that their friends (who are invariably black) not have to pay their bills . . . Finally, **at a Board meeting on January 20, 2010, the City Administrator was told by the majority black aldermen that if he did not demote me from my position, they would fire him. Thereafter, I was moved from my position as being a lead serviceman to a job on the line . . . The animosity against me is because I am white** and because the majority black aldermen believe that they, and any of their black friends, should not be required to pay their electric bills. **I believe the actions of the aldermen is also designed to try to disqualify me from the vacant position of Superintendent of the Utilities Department.**

Shortly thereafter, on March 10, 2010, Plunkett was terminated by a 3-2 Board vote. According to Plunkett, no reason was given for this termination. The mayor subsequently vetoed the Board's vote. At a board meeting held on April 13, 2010, Bill Porter appeared before the Board and voiced complaints from six individuals in the city concerning the electric department. Plunkett asserts that the six individuals voicing the concerns were all African American. According to Plunkett, at this same Board meeting, Plaintiff "Joni Lofton was moved to the warehouse, Shasta was demoted, stripped his interim superintendent title, and moved to the warehouse also."  On April 22, 2010, Plunkett was terminated for the second time, by a 4-1 Board vote.  The 4-1 vote was along racial lines, and the mayor does not have authority to veto a 4-1 vote.

On April 22, 2010, Dwight Prisock (Caucasian) replaced Plunkett as interim superintendent.  The Board apparently also attempted to terminate Prisock on July 15, 2010, but the termination vote was vetoed by the mayor.  Paris Calvert (African American) replaced Plunkett as meter reader supervisor. Plunkett asserts that he had served the position of meter reader supervisor for two years prior to his termination.  Plunkett further maintains that, even after his termination, Board members continued to harass him.

On September 16, 2010, Plunkett received his right to sue letter from the EEOC.  He thereafter filed this suit against the City of West Point, Mississippi, as well as Jasper Pittman, in his individual capacity, on December 6, 2010, alleging as follows: (1) racial discrimination in violation of Title VII; (2) retaliation in violation of Title VII; (3) racial discrimination pursuant to 42 U.S.C. § 1981; (4) a violation of the Equal Protection Clause; (5) a violation of the Due Process Clause; (6) wrongful discharge in violation of Mississippi law; (7) malicious interference

4

with contract against Defendant Pittman; and (8) intentional infliction of emotion distress against Defendant Pittman.  Defendants have filed a Motion for Summary Judgment [42], arguing they are entitled to judgment as a matter of law on all of Plaintiff Plunkett's claims.

### Plaintiff Joni Lofton

Plaintiff Joni Lofton ("Lofton" or "Plaintiff Lofton") is a Caucasian female formerly employed by the City of West Point, Mississippi's Water and Light Department.  Lofton's employment with the City of West Point commenced in 2006, when she was hired as a cashier in the water and light department.  Lofton appears to have been trained in various areas of this department and, in August 2008, she was promoted to the position of customer service representative, which was apparently "a combination of accounts payable and customer service, specifically dealing with disconnections."[2]  According to Lofton, when she was hired she reported directly to Jan Wray, who performed both the accountant and the office manager positions for the City.  Yet, in 2009, Wray was suspended twice.  After Wray was suspended the first time, Lofton and another employee, Debra Young, authored a letter to Randy Jones, the Chief Administrative Officer ("CAO") for the City of West Point, expressing concerns over Wray's suspension.  After Wray was suspended a second time in 2009, she resigned.[3]  According to Lofton, Wray had never been written up, nor had any other problems with her employment, until the racial composition of the Board of Selectmen for the City of West Point changed to majority African American.

---

[2] According to Defendant, also in August 2009, Lofton's title was "modified" to "accounts payable/customer service clerk, and her salary was increased."

[3] Plaintiff asserts that the Board of Selectmen "forced [ ] Jan Wray to retire."

Apparently, after Wray resigned, Lofton, Debra Young, and Shasta Plunkett "picked up the duties of the officer manager because there was no one in that position for several months." On January 20, 2010, Lofton, Young, and Plunkett wrote another letter to CAO Jones, criticizing "the insufficiency of staffing at the department, and the interference by the mayor and certain board members." Shortly thereafter, it appears that Lofton applied for the position as office manager. Lofton asserts that she submitted her application to CAO Jones and informed him that she was interested in the office manager position. Lofton was not hired for the position; instead, the position was filled by Teresa Moore (African American).[4]

In April 2010, changes were made within the water and light department. As discussed *supra*, Shasta Plunkett was removed from his interim post and assigned to the warehouse. Along the same lines, Lofton was also moved to the warehouse; however, her primary duties remained the same. The day after Lofton was reassigned, she was apparently advised by the mayor to leave the warehouse and resume her regular duties at the water and light department.

Lofton maintains that Moore began harassing her after she was hired as the new office manager. Lofton contends that she began suffering from panic and anxiety attacks due to Moore's alleged harassment. According to Lofton, she therefore filed an EEOC charge on April 19, 2010. On May 17, 2010, Lofton submitted her resignation letter, stating as follows:

> I am writing to submit my resignation from the West Point City Water and Light Department effective two weeks from this date, May 17, 2010.

> This was not an easy decision to make on my part. The past four years have been very rewarding and I have thoroughly enjoyed my time here, but due to the changes in the Water and Light Department over the past couple of months, the

---

[4] CAO Randy Jones testified that it was the Board's decision to hire Moore, and he was not consulted about the hiring of Moore for the position.

> mental stress and persecution that I have has to endure have led me to this resignation. I feel that this is my only option at this time.

On August 18, 2010, Lofton received her right to sue letter from the EEOC. She thereafter filed this suit against the City of West Point, Mississippi on December 6, 2010, alleging as follows: (1) race discrimination in violation of Title VII; (2) constructive discharge in violation of Title VII; and (3) racial discrimination pursuant to 42 U.S.C. § 1981. Defendant has filed a Motion for Summary Judgment [33], arguing it is entitled to judgment as a matter of law on all of Plaintiff Lofton's claims.

## **LEGAL STANDARD**

Summary judgment is warranted under Rule 56(a) of the Federal Rules of Civil Procedure when evidence reveals no genuine dispute regarding any material fact and that the moving party is entitled to judgment as a matter of law.[5] The rule "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986).

The party moving for summary judgment "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." Id. at 323, 106 S. Ct. 2548. The nonmoving party must then "go beyond the pleadings" and "designate 'specific facts

---

[5] The Court feels compelled to point out to the parties that effective December 1, 2010, Rule 56 has been amended, and the summary judgment standard is now reflected in Rule 56(a), not 56(c). Rule 56(a) now states that a court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a).

showing that there is a genuine issue for trial.'" Id. at 324, 106 S. Ct. 2548 (citation omitted). In reviewing the evidence, factual controversies are to be resolved in favor of the nonmovant, "but only when . . . both parties have submitted evidence of contradictory facts." Little v. Liquid Air Corp., 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc). When such contradictory facts exist, the Court may "not make credibility determinations or weigh the evidence." Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 150, 120 S. Ct. 2097, 147 L. Ed. 2d 105 (2000). However, conclusory allegations, speculation, unsubstantiated assertions, and legalistic arguments have never constituted an adequate substitute for specific facts showing a genuine issue for trial. TIG Ins. Co. v. Sedgwick James of Wash., 276 F.3d 754, 759 (5th Cir. 2002); SEC v. Recile, 10 F.3d 1093, 1097 (5th Cir. 1997); Little, 37 F.3d at 1075.

## ANALYSIS AND DISCUSSION

### *Plaintiff Shasta Plunkett*

A.  Race Discrimination Under Title VII

Plunkett contends that he was discriminated against due to his race (Caucasian) when he was "demoted" and eventually terminated. Defendant, in response, contends that Plunkett (i) failed to exhaust his administrative remedies, and (ii) cannot demonstrate a prima facie case of race discrimination. The Court considers each of Defendant's arguments in turn.

*Failure to Exhaust Administrative Remedies*

Employment discrimination plaintiffs must exhaust their administrative remedies before pursuing claims in federal court. Taylor v. Books a Million, Inc., 296 F.3d 376, 379 (5th Cir. 2002). Exhaustion under Title VII requires filing a timely charge of discrimination with the EEOC and receipt of a "right-to-sue" letter. 42 U.S.C. § 2000e-5 (e) and (f); see also Taylor, 296

F.3d at 379. Exhaustion "serves the dual purposes of affording the EEOC and the employer an opportunity to settle the dispute through conciliation, and giving the employer some warning as to the conduct about which the employee is aggrieved." Hayes v. MBNA Tech., Inc., 2004 WL 1283965, at *3 (N.D. Tex. June 9, 2004) (citing Alexander v. Gardner-Denver Co., 415 U.S. 36, 44, 94 S. Ct. 1011, 39 L. Ed. 2d 147 (1974), and Sanchez v. Standard Brands, Inc., 431 F.2d 455, 466 (5th Cir. 1970)).

The scope of a lawsuit is limited to the allegations made in the EEOC charge and any claims that could reasonably be expected to grow out of it. See Fine v. GAF Chemical Corp., 995 F.2d 576, 578 (5th Cir. 1993). Courts are to "construe employment discrimination charges with the 'utmost liberality,' bearing in mind that such charges are generally prepared by laymen untutored in the rules of pleading." Price v. Sw. Bell Tel. Co., 687 F.2d 74, 78 (5th Cir. 1982); see also Preston v. Tex. Dep't of Family and Protective Servs., 222 F. App'x 353, 356 (5th Cir. 2007). To determine whether an allegation in a complaint falls within the scope of a charge filed with the EEOC, a court must "engage in fact-intensive analysis of the statement given by the plaintiff in the administrative charge, and look slightly beyond its four corners, to its substance rather than its label." Pacheco v. Mineta, 448 F.3d 783, 789 (5th Cir. 2006). The Fifth Circuit has stated that courts "must ever be mindful that the provisions of Title VII were not designed for the sophisticated or the cognoscenti, but to protect equality of opportunity among all employees and prospective employees. This protection must be extended to even the most unlettered and unsophisticated." Sanchez, 431 F.2d at 463 (citation omitted); see also Fed. Exp. Corp. v. Holowecki, 552 U.S. 389, 400-03, 128 S. Ct. 1147, 170 L. Ed. 2d 10 (2008) (discussing the "permissive standard" of what constitutes a charge under the ADEA and noting that "[t]he

9

system must be accessible to individuals who have no detailed knowledge of the relevant statutory mechanisms and agency process"); Edelman v. Lynchburg College, 535 U.S. 106, 112-113, 122 S. Ct. 1145, 152 L. Ed. 2d 188 (2002); Fine, 995 F.2d at 578 (holding that a plaintiff may assert a Title VII cause of action based on a type of discrimination not explicitly listed on the charge if that discrimination is "like or related to the charge's allegations . . . .").

Here, Defendants contend that "[a]lthough the Plaintiff did file a charge of discrimination in February, 2010, regarding an alleged demotion, this charge does not pertain to the facts and circumstances of the Plaintiff's termination." The Court disagrees and finds that the substance of the allegations contained within the factual statement could reasonably result in an investigation regarding Plunkett's termination claim.   The timeline in this action is as follows: (a) February 2, 2010: EEOC charge filed, alleging claims of race discrimination as a continuing action; (b) March 10, 2010: Plunkett fired and then reinstated; (c) April 13, 2010: Plunkett allegedly demoted; (d) April 22, 2010: Plunkett terminated and not reinstated; (e) September 16, 2010: Four months after termination, EEOC issued Plunkett a right to sue letter. The Fifth Circuit has long held that "a judicial complaint filed pursuant to Title VII may encompass any kind of discrimination like or related to allegations contained in the charge and growing out of such allegation *during the pendency of the case before the Commission*." Sanchez v. Standard Brands, Inc., 431 F.2d 455, 466 (5th Cir. 1970) (emphasis added); see also Nat'l Ass'n of Gov't Employees v. City Public Serv. Bd. of San Antonio, Texas, 40 F.3d 698, 711 (5th Cir. 1994) (same).[6] Given the timeline as well as the allegations within Plunkett's EEOC charge, the Court

---

[6] The Court notes that Defendants appear to rely heavily on the Fifth Circuit's decision in Randel v. United States Dep't of Navy, 157 F.3d 392, 395 (5th Cir. 1998) to support its position. The scenario here is quite different than the one presented in Randel.  In Randel, the Navy contended that Randel failed to exhaust his administrative remedies as to his claim of racial discrimination. The

finds that Plunkett did not fail to exhaust his administrative remedies with respect to his claim of race discrimination under Title VII.

*Title VII Race Discrimination*

(i)      *Title VII Claims Against the City of West Point*

Under Title VII, it is "an unlawful employment practice for an employer . . . to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1).  Plaintiff does not seek to prove his case with direct evidence, instead presenting alleged circumstantial evidence and analyzing his claim under <u>McDonnell Douglas Corp. v. Green</u>, 411 U.S. 792, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973).  In order to establish prima facie case that Defendant failed to promote Plaintiff Plunkett because of his race, Plaintiff must demonstrate: "(1) [he] belongs to a protected class; (2) [he] sought and was qualified for the promotion; (3) [he] was denied the promotion; and (4) the position [he] sought was filled by someone outside the protected class." <u>Johnson v. Louisiana ex rel Louisiana Bd. of Sup'rs</u>, 79 F. App'x 684, 686 (5th Cir. 2003) (citing <u>Price v. Fed. Express Corp.</u>, 283 F.3d 715, 720 (5th Cir. 2002) (citing <u>St. Mary's Honor Ctr. v. Hicks</u>, 509 U.S. 502, 506, 113 S. Ct. 2742, 125 L. Ed. 2d 407 (1993)).

Once a plaintiff has made a prima facie case, the defendant then has the burden of producing a legitimate, nondiscriminatory motive for the adverse employment action. <u>Parker v.</u>

---

EEOC charge filed in <u>Randel</u> *made no reference to race discrimination at all*; instead, it was confined to reprisal and disability discrimination. The <u>Randel</u> court noted that race discrimination is (of course) distinct from reprisal. Here, the Court is not holding that Plaintiff Plunkett's race discrimination claim is the same as his retaliation claim, as those are clearly distinct issues.

State of La. Dep't of Educ. Special Sch. Dist., 323 F. App'x 321, 327 (5th Cir. 2009). The defendant's burden at this stage is merely one of production-not persuasion. Id.

If the defendant can articulate a reason that, if believed, would support a finding that the action was nondiscriminatory, then the inference of discrimination created by the plaintiff's prima facie case disappears, and the factfinder must decide the ultimate question of whether the plaintiff has proven intentional discrimination. St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 511-12, 113 S. Ct. 2742, 125 L. Ed. 2d 407 (1993). The plaintiff must present substantial evidence that the employer's proffered reason is a pretext for discrimination. Laxton v. Gap, Inc., 333 F.3d 572, 578 (5th Cir. 2003). To show pretext on summary judgment, "the plaintiff must substantiate his claim of pretext through evidence demonstrating that discrimination lay at the heart of the employer's decision." Price v. Fed. Express Corp., 283 F.3d 715, 720 (5th Cir. 2002).

Pretext may be established "either through evidence of disparate treatment or by showing that the employer's proffered explanation is false or 'unworthy of credence.'" Laxton, 333 F.3d at 578 (quoting Reeves, 530 U.S. at 143, 120 S. Ct. 2097). "To raise an inference of discrimination, the plaintiff may compare his treatment to that of nearly identical, similarly situated individuals." Bryant v. Compass Group USA Inc., 413 F.3d 471, 478 (5th Cir. 2005). To establish disparate treatment, however, a plaintiff must show that the employer gave preferential treatment to another employee under "nearly identical" circumstances." Id. Alternatively, "[a]n explanation is false or unworthy of credence if it is not the real reason for the adverse employment action." Laxton, 333 F.3d at 578.

In contrast, the Fifth Circuit has modified the <u>McDonnell Douglas</u> formulation to permit proof that discrimination was one motivating factor among others for an adverse employment action. <u>See</u> <u>generally</u> <u>Rachid v. Jack in the Box, Inc.</u>, 376 F.3d 305 (5th Cir. 2004). At one time, the Fifth Circuit required that a plaintiff present direct evidence of discrimination in order to receive the benefit of a mixed-motive analysis. <u>See</u> <u>Fierros v. Tex. Dep't of Health</u>, 274 F.3d 187, 191 (5th Cir. 2001). However, the Supreme Court in <u>Desert Palace, Inc. v. Costa</u> held that Congress's failure to require a heightened burden of proof suggested that courts should not depart from the general rule of civil litigation that "requires a plaintiff to prove his case 'by a preponderance of the evidence,' using 'direct or circumstantial evidence.'" 539 U.S. 90, 99, 123 S. Ct. 2148, 156 L. Ed. 2d 84 (2003) (quoting <u>Postal Service Bd. of Governors v. Aikens</u>, 460 U.S. 711, 714 n. 3, 103 S. Ct. 1478, 75 L. Ed. 2d 403 (1983)). Therefore, a plaintiff asserting a Title VII discrimination claim may utilize the mixed-motive analysis whether she has presented direct or circumstantial evidence of discrimination. <u>Id.</u> at 101, 123 S. Ct. 2148; <u>Smith v. Xerox Corp.</u>, 602 F.3d 320, 327-28 (5th Cir. 2010).

Here, Defendants argue that Plaintiff cannot demonstrate a prima facie case of race discrimination. The Court begins by noting that Defendants' brief on this particular issue is far from clear. Plaintiff Plunkett has two, albeit interrelated, race discrimination claims: one for demotion and one for termination. Defendants do not separate these claims out in their brief. Nor do Defendants specifically allege what elements of a prima facie case Plaintiff Plunkett allegedly cannot demonstrate.

Plunkett is a Caucasian male, and it appears undisputed that he was minimally qualified for the position(s) held within the electric department. Defendants contend that "[Plunkett's] pay

was not effected and he continued to serve in a high level position where his knowledge and skills would be used." Defendants provide no further analysis of this issue. Presumably, Defendants are contending that Plunkett cannot establish that he suffered an adverse employment action as it relates to his alleged demotion. However, "'to be equivalent to a demotion, a transfer need not result in a decrease in pay, title, or grade; it can be a demotion if the new position proves objectively worse-such as being less prestigious or less interesting or providing less room for advancement.'" Alvarado v. Texas Rangers, 492 F.3d 605, 613 (5th Cir. 2007) (quoting Sharp v. City of Houston, 164 F.3d 923, 933 (5th Cir. 1999) (citing Forsyth v. City of Dallas, 91 F.3d 769, 774 (5th Cir. 1996)); Click v. Copeland, 970 F.2d 106, 109 (5th Cir. 1992); see also Serna v. City of Antonio, 244 F.3d 479, 483 (5th Cir. 2001) ("A transfer, even without an accompanying cut in pay or other tangible benefits, may constitute an adverse employment action . . . ."); Hinson v. Clinch County, Ga. Bd. of Educ., 231 F.3d 821, 829 (11th Cir. 2000) ("In a Title VII case, a transfer to a different position can be 'adverse' if it involves a reduction in pay, prestige *or* responsibility."). Factual questions exist as to whether Plaintiff Plunkett suffered an adverse employment action when he was allegedly demoted.

Along the same lines, the Court concludes that it cannot hold as a matter of law that Plaintiff cannot demonstrate of prima facie case of race discrimination. Defendants contend that Plaintiff was replaced by a Caucasian, Dwight Prisock; however, Plunkett maintains both that the Board also attempted to terminate Prisock shortly after he was hired, and that Plunkett's "duties as a meter reader supervisor were taken over by Paris Calvert, [African American]." Plunkett also declares that he was informed on numerous occasions by the mayor that "he had to hire a[n] [African-American] person to be on the line crew; they wanted one to be 'seen' over there." The

prima facie case framework "was never intended to be rigid, mechanized, or ritualistic." <u>Furnco Constr. Corp. v. Waters</u>, 438 U.S. 567, 577, 98 S. Ct. 2943, 57 L. Ed. 2d 957 (1978). Instead, "[t]he central focus of the inquiry in a case such as this is always whether the employer is treating some people less favorably than others because of their race, color, religion, sex, or national origin." <u>Id.</u> (internal citations omitted). Further, the Fifth Circuit has noted that in order to establish a prima facie case, a plaintiff "need only make a very minimal showing." <u>Nichols v. Loral Vought Sys. Corp.</u>, 81 F.3d 38, 41 (5th Cir. 1996). The Court finds that, for purposes of summary judgment, Plunkett has met such a standard when viewing the evidence both in its entirety and in the light most favorable to the Plaintiff. Defendants have only contended through their motion for summary judgment that "Plaintiff cannot articulate a prima facie case of race discrimination," and the Court declines to generate a pretext argument not analyzed in, nor urged through, Defendants' motion.[7] Accordingly, Defendants' summary judgment motion as to Plaintiff Plunkett's race discrimination claim against the City of West Point is denied.

   *(ii) Title VII Race Discrimination Claim Against Jasper Pittman*

   Presumably, Plunkett only asserts his Title VII race discrimination claim against the City of West Point, as opposed to also against Jasper Pittman. However, to be sure, the Court notes that, while Title VII defines "employer" to include any agent of the employer, the Fifth Circuit does not interpret the statute to impose individual liability on the agent. <u>See</u> <u>Indest v. Freeman Decorating, Inc.</u>, 164 F.3d 258, 262 (5th Cir. 1999); <u>Chehl v. Southern Univ. and Agric. And Mech. Coll.</u>, 34 F. App'x 963 (5th Cir. 2002) ("Title VII does not impose personal liability on

---

   [7] <u>See</u> <u>In re Cao</u>, 619 F.3d 410, 435 (5th Cir. 2010) (noting that the role of the Court is "not to create arguments for adjudication" or "raise [them] like a Phoenix from the ashes[,]" but "rather, [the Court's] role is to adjudicate the arguments with which [it is] presented").

individuals."); <u>Grant v. Lone Star Co.</u>, 21 F.3d 649 (5th Cir. 1994) (holding that "[o]nly 'employers,' not individuals acting in their individual capacity who do not otherwise meet the definition of 'employers,' can be held liable under Title VII"); <u>Clanton v. Orleans Parish Sch. Bd.</u>, 649 F.2d 1084 (5th Cir. 1981) (holding that a supervisor who implemented a maternity leave policy that violated the terms of Title VII could not be held individually liable); <u>Chavez v. McDonald's Corp.</u>, 1999 WL 814527, at *2 (N.D. Tex. Oct. 8, 1999) (dismissing Title VII claim brought against supervisor in his individual capacity). "[R]elief under Title VII is available only against an employer, not an individual supervisor or fellow employee." <u>Foley v. Univ. of Houston Sys.</u>, 355 F.3d 333, 340 (5th Cir. 2003); <u>Ackel v. Nat'l Commc'ns, Inc.</u>, 339 F.3d 376, 381 (5th Cir. 2003) ("Individuals are not liable under Title VII in either their individual or official capacities."). Accordingly, the Court concludes that Plunkett's Title VII claims may not proceed against the individual Defendant, as Title VII liability does not attach to individuals acting in their individual capacity.

Additionally, a plaintiff may not maintain a Title VII action against both the actual employer and the employer's agent. Generally, only "employers" may be liable under Title VII. <u>Turner v. Baylor Richardson Med. Ctr</u>, 476 F.3d 337, 343 (5th Cir. 2007) (citations omitted). To qualify as an employer under Title VII, two conditions must be met: (1) the defendant must fall within the statutory definition; and (2) there must be an employment relationship between the plaintiff and the defendant. <u>Deal v. State Farm County Mut. Ins. Co. of Texas</u>, 5 F.3d 117, 118 n.2 (5th Cir. 1993) (citation omitted).

Title VII defines an "employer" as "a person engaged in an industry affecting commerce who has fifteen or more employees . . ., *and any agent of such a person* . . ." <u>See</u> 42 U.S.C. §

16

2000e(b)) (emphasis added).[8]  While the "any agent" language is construed "liberally," see

Harvey v. Blake, 913 F.2d 226, 227 (5th Cir. 1990), it is not interpreted literally.  Rather, the

phrase conveys Congress's intent to "import *respondeat superior* liability into Title VII." Smith

v. Amedisys, Inc., 298 F.3d 434, 449 (5th Cir. 2002) (citations omitted). Although, while under

certain circumstances—for example, when the supervisor has been delegated the employer's

traditional rights such as hiring and firing—an immediate supervisor may be considered an

"agent" and therefore an "employer" under Title VII, the supervisor faces liability solely in her

*official*, not individual, capacity. Harvey, 913 F.2d at 227; Grant v. Lone Star Co., 21 F.3d 649,

652–53 (5th Cir. 1994). Thus, a Title VII suit against a supervisor, who is not an "employer" in

his or her own right, is actually a suit against the employing corporation. Indest v. Freeman

Decorating, Inc., 164, F.3d 258, 262 (5th Cir. 1999). A plaintiff, however, may not maintain a

Title VII action against both her employer and the employer's agent because the employer could

then face double liability for the same act. Id. (citation omitted).  In other words, joinder of both

the employer and its agent is redundant.  Thus, to any extent Plunkett attempted to bring his Title

VII claim against Jasper Pittman, the Court finds such an action fails.

B.  Retaliation Under Title VII

Plaintiff Plunkett additionally makes a claim for retaliation based on his filing of an

EEOC charge. While Defendants recognize that Plunkett has advanced a Title VII retaliation

claim (*i.e.*, Defendants note, "Plaintiff asserts Title VII claims of race discrimination and

retaliation"), Defendants entirely fail—either intentionally or negligently—to brief this issue in

---

[8] A "person," in turn, "includes one or more individuals, governments, governmental agencies, political subdivisions, labor unions, partnerships, associations, corporations, legal representatives, mutual companies, joint-stock companies, trusts, unincorporated organizations, trustees, trustees in cases under Title 11, or receivers." 42 U.S.C. § 2000e(a).

their summary judgment motion.[9]   Instead, Defendants' Title VII analysis is limited to Plaintiff

Plunkett's allegations of race discrimination.   Needless to say, racial discrimination and

retaliation are two distinct claims.   Given this, the Court denies any motion for summary

judgment Defendants intended to urge concerning Plaintiff Plunkett's Title VII retaliation claim

asserted against the City of West Point. However, the Court notes that the Title VII retaliation

claim may not be asserted against Defendant Jasper Pittman in his individual capacity for the

same reasons as discussed *supra* concerning Plunkett's race discrimination claim asserted against

Pittman.

---

[9] As to administrative exhaustion of remedies with regards to Plunkett's retaliation claim, the Court notes that, in Gupta v. East Texas State University, 654 F.2d 411, 414 (5th Cir. 1981), the plaintiff, Gupta, brought a Title VII suit alleging that his former employer discriminated against him on the basis of national origin and religion. Gupta filed an EEOC charge complaining of the discrimination on July 9, 1975. Later, in February of 1976, Gupta filed a second charge with the EEOC. After he filed this second charge, Gupta's employer notified him that his contract would not be renewed for the following year. Gupta never filed a third charge with the EEOC complaining that his employer had discharged him in retaliation for his two charges with the EEOC.

The Gupta court found that it could still consider the retaliatory-discharge claim, despite the absence of a third charge with the EEOC. It reasoned that "[i]t is the nature of retaliation claims that they arise after the filing of the EEOC charge." Id.  Thus, "[r]equiring prior resort to the EEOC would mean that two charges would have to be filed in a retaliation case . . . [which] would serve no purpose except to create additional procedural technicalities when a single filing would comply with the intent of Title VII." Id.

Some courts, however, have questioned whether Gupta's holding is still valid in light of the Supreme Court decision in National R.R. Passenger Corp. v. Morgan, 536 U.S. 101 122 S. Ct. 2061, 153 L.Ed.2d 106 (2002). See, e.g., Martinez v. Potter, 347 F.3d 1208, 1210-11 (10th Cir. 2003). Nevertheless, courts in the Fifth Circuit have continued to apply Gupta after Morgan. See, e.g., Eberle v. Gonzales, 240 F. App'x 622, 2007 WL 1455928 (5th Cir. May 18, 2007); Miller v. Sw. Bell Telephone Company, 51 F. App'x 928, (5th Cir. 2002); Stevenson v. Verizon Wireless LLC, 2009 WL 129466 (N.D. Tex. Jan. 16, 2009) (discussing Morgan, yet still applying Gupta); see also Houston v. Army Fleet Services, LLC, 509 F. Supp. 2d 1033 (M.D. Ala. 2007) (citing Gupta, which is binding in the Eleventh Circuit as well). Until the Supreme Court and/or the Fifth Circuit reassess Gupta's rationale, this Court is bound to follow its holding. See Sapp v. Potter, 413 F. App'x 750, 2011 WL 661544, at *3 n.2 (5th Cir. Feb. 22, 2011) (noting that "[s]ome circuits have [ ] held that the Supreme Court's Morgan decision abolished or narrowed the Gupta exception . . . We need not address the potential abolition of the Gupta exception because the facts of this case do not support the exception's application.").

C. Fourteenth Amendment Claims

In his complaint, Plaintiff Plunkett alleges that Defendants' action(s) "violat[ed] the rights secured by the Equal Protection Clause of the United States Constitution, Amendment Fourteen, secured by 42 U.S.C. § 1981; and secured by Title VII of the Civil Rights Act of 1964." Plunkett also alleges claims under the Due Process Clause. Plaintiff Plunkett maintains that the court "has federal question jurisdiction under 28 U.S.C. § 1331 and civil rights jurisdiction under 28 U.S.C. § 1343, for a cause of action arising under Title VII of the Civil Rights Act of 1964, and under 42 U.S.C. § 1981."

Defendants assert that Plunkett is required to pursue his Fourteenth Amendment claims under § 1983, and that his failure to plead, or otherwise urge a claim under, § 1983 should result in dismissal of the constitutional actions. See, e.g., Hearth, Inc. v. Dept. of Pub. Welfare, 617 F.2d 381, 382-83 (5th Cir. 1980) (affirming dismissal of constitutional claim against a state officials where the plaintiff failed to invoke § 1983 and explaining that the court has "been hesitant to find causes of action arising directly from the Constitution"); Mitchell v. City of Houston, 57 F. App'x 211 (5th Cir. 2003) (same); Berger v. City of New Orleans, 273 F.3d 1095, 2001 WL 1085131, at *1-2 (5th Cir. Sept. 4, 2001) (noting that "[e]ven the most cursory reading of our case law demonstrates beyond cavil that we have permitted prosecution of such actions directly under the Constitution *only* when necessitated by a total absence of alternative courses and no other means existed to seek redress for flagrant violations of the plaintiff's constitutional rights. When a statutory mechanism is available, § 1983 being a prime example, plaintiffs must invoke its protection.") (emphasis in original) (internal quotations omitted); Arpin v. Santa Clara Valley Transp. Agency, 261 F.3d 912, 925 (9th Cir. 2001) ("[A] litigant

complaining of a violation of a constitutional right does not have a direct cause of action under the United States Constitution but must utilize 42 U.S.C. § 1983"); Wax 'n Works v. City of St. Paul, 213 F.3d 1016, 1019 (8th Cir. 2000) (holding that a claim may not be brought directly under the Fourteenth Amendment); Moffett v. Miss. Dept. of Mental Health, 2009 WL 1770121 (S.D. Miss. June 23, 2009) (granting summary judgment on plaintiff's Equal Protection Clause action for failure to plead and pursue the Fourteenth Amendment claim under § 1983). As noted, actions brought directly under the Constitution are permitted "only when necessitated by a total absence of alternative courses." Berger, 273 F.3d 1095, 2001 WL 1085131, at *2. Here, there is certainly an alternative remedy: § 1983. However, § 1983 is not plead anywhere in Plunkett's complaint. Plunkett did not contest this issue in his response, and the Court finds that Defendants' argument is well-taken. Accordingly, Plunkett's claims under the Fourteenth Amendment are dismissed.

   D.  Race Discrimination Under Section 1981

*City of West Point*

Plunkett's complaint contains no reference to 42 U.S.C. § 1983. "[R]equiring § 1981 claims to be pursued through § 1983 is not a mere pleading formality." Felton v. Polles, 315 F.3d 470, 482 (5th Cir. 2002). "The express 'action at law' provided by § 1983 for the 'deprivation of any rights, privileges, or immunities secured by the Constitution and laws,' provides the exclusive federal damages remedy for the violation of the rights guaranteed by § 1981 when the claim is pressed against a state actor." Id. at 481. Therefore, Plunkett has failed to invoke the only remedy available to him for the alleged deprivation of his § 1981 rights by Defendants. Id. at 482; see also Meyers v. La Porte Indep. Sch. Dist., 277 F. App'x 333, 335 (5th Cir. 2007)

(affirming summary judgment where the plaintiff brought her § 1981 claim independently of her § 1983 action); <u>Oden v. Oktibbeha Cnty., Miss.</u>, 246 F.3d 458, 463-64 (5th Cir. 2001) (plaintiff could not maintain an independent cause of action under § 1981).  Accordingly, this claim is dismissed.

<em>Jasper Pittman</em>

The court initially observes that the Fifth Circuit has expressed some doubt as to whether a § 1981 claim lies against "an individual defendant not a party to the contract giving rise to the claim."[10] <u>Felton v. Polles</u>, 315 F.3d 470, 480 (5th Cir. 2002).  Indeed, "Section 1981's focus on the right to contract and the 'contractual relationship' would seem to permit a cause of action for racial discrimination against the contracting parties only." <u>Miller v. Wachovia Bank, N.A.</u>, 541 F.Supp.2d 858, 861 (N.D. Tex. 2008) (citing <u>Bellows v. Amoco Oil Co.</u>, 118 F.3d 268, 274 (5th Cir. 1997)).  However, the Fifth Circuit has "accepted that § 1981 liability will lie against an individual defendant if that individual is 'essentially the same' as the State for the purposes of the complained-of conduct.'" <u>Foley v. University of Houston System</u>, 355 F.3d 333, 337 (5th Cir. 2003) (quoting <u>Felton</u>, 315 F.3d at 481).

Here, Plaintiff Plunkett entirely fails to brief, or even specifically allege, a § 1981 claim against Jasper Pittman in his individual capacity.  Defendants maintain that Jasper Pittman has

---

[10] Defendants maintain that the Fifth Circuit has affirmatively held that Section 1981 "may not be asserted against individuals not a party to the contract upon which the action is based."  This statement in Defendants' brief is quite a distortion of the law in the Fifth Circuit. As the Fifth Circuit noted in <u>Foley v. University of Houston System</u>,

> We recently noted in <u>Felton v. Polles</u>, 315 F.3d 470 (5th Cir. 2002), that it has *not* yet been decided "whether a § 1981 claim lies against an individual defendant not a party to the contract giving rise to the claim."

355 F.3d 333, 337 (5th Cir. 2003) (emphasis added); <u>see also</u> <u>Jackson v. Biedenharn</u>, 429 F. App'x 369 (5th Cir. 2011).

not entered into any employment agreement with Plunkett, and Plunkett fails to contest or address this factual allegation. Further, Plunkett neither discusses § 1981's applicability in this instance nor whether Pittman could be considered "essentially the same" as the employer. It is **not** the duty of this Court to provide plaintiffs with arguments they neglect to generate. See In re Cao, 619 F.3d 410, 435 (5th Cir. 2010) (noting that the role of the Court is "not to create arguments for adjudication" or "raise [them] like a Phoenix from the ashes[,]" but "rather, [the Court's] role is to adjudicate the arguments with which [it is] presented"); Williams v. Valenti, 432 F. App'x 298, 303 (5th Cir. 2011) (noting that the district court is "not required to search the record in support of evidence supporting a party's opposition to summary judgment"); Cinel v. Connick, 15 F.3d 1338, 1345 (5th Cir. 1994) ("A party who inadequately briefs an issue is considered to have abandoned the claim."). Accordingly, to the extent Plunkett intended to assert a § 1981 action against Jasper Pittman in his individual liability, Defendants' motion for summary judgment as to this claim is granted.

E. State-Law Wrongful Discharge Against the City

Defendant also moves for dismissal of Plaintiff Plunkett's state law tort claim of wrongful termination on the basis that he failed to comply with the mandatory notice requirement of the Mississippi Tort Claims Act ("MTCA"). Under Mississippi law,

> There is a mandatory notice requirement on potential plaintiffs which must be satisfied prior to the institution of any tort lawsuit against a governmental entity or one of its employees. Specifically, in an action against a governmental agency "ninety days prior to maintaining an action thereon, such person shall file a notice of claim with the chief executive officer of the governmental entity."

Black v. City of Tupelo, 853 So. 2d 1221, 1226 (Miss. 2003) (quoting MISS. CODE ANN. § 11-46-11(1)). In Plunkett's brief in opposition, he does not contest that he failed to file a Notice of

Claim as required by the MTCA. Plunkett also entirely fails to contest—or otherwise espouse any factual allegations in rebuttal to—Defendants' arguments concerning the merits of this claim, both as to the claim against the City or against Pittman in his individual capacity.[11] Given this, the Court finds Defendants' argument well-taken, and grants the motion for summary judgment as to this claim. See, e.g., Black v. N. Panola Sch. Dist., 461 F.3d 584, 588 n.1 (5th Cir. 2006) ("[F]ailure to pursue this claim beyond her complaint constituted abandonment."); Cinel v. Connick, 15 F.3d 1338, 1345 (5th Cir. 1994) ("A party who inadequately briefs an issue is considered to have abandoned the claim."); Vela v. City of Houston, 276 F.3d 659, 679 (5th Cir. 2001); Yohey v. Collins, 985 F.2d 222, 224–25 (5th Cir. 1993); Moore v. Delta Airlines, Inc., 2012 WL 685415, at *5 (N.D. Tex. Mar. 1, 2012) (finding plaintiff abandoned claims not addressed in response to defendant's summary judgment motion).

F. Malicious Interference With Employment

"A claim for malicious interference with employment is the same as asserting a tortious interference with contractual relations claim." Gibson v. Estes, 2007 WL 405043, at *2 (N.D. Miss. Feb. 2, 2007) (citing Roberson v. Winston Cnty., Miss., 2002 WL 449667 (N.D. Miss. 2000)). Mississippi law allows for recovery against those who intentionally and improperly interfere with the performance of a contract between another and a third party, causing the third party not to perform the contract and thereby causing injury. Morrison v. Mississippi Enter. for Tech., 798 So. 2d 567, 574 (¶ 23) (Miss. Ct. App. 2001). Tortious interference with at-will

---

[11] See DeCarlo v. Bonus Stores, Inc., 989 So. 2d 351, 358 (Miss. 2008) (holding that the "McArn-created exceptions were intended only to impose liability on the employer and not on individual defendants who are acting in the course and scope of their employment when participating in the discharge giving rise to the retaliatory discharge claim").

employment can be the basis of a claim. <u>Levens v. Campbell</u>, 733 So.2d 753, 760 (¶ 27) (Miss. 1999).

To prove his claim, Plunkett must show: (1) the acts were intentional and willful; (2) that they were calculated to cause damages to the plaintiff in his lawful business; (3) that they were done with the unlawful purpose of causing damages and loss, without right or justifiable cause on the part of the defendant; and (4) that the actual loss occurred. <u>Gibson</u>, 2007 WL 405043, at *2. "However, 'one occupying a position of responsibility on behalf of another is privileged, within the scope of that responsibility and absent bad faith, to interfere with his principal's contractual relationship with a third person.'" <u>Morrison</u>, 798 So. 2d at 574 (¶ 24) (quoting <u>Shaw v. Burchfield</u>, 481 So. 2d 247, 255 (Miss. 1985)). The Mississippi Court of Appeals has stated "[t]he word 'unlawful' in the third element of the tort is somewhat redundant, as the 'purpose of causing damage and loss' is unlawful when it is 'without right or justifiable cause.'" <u>Morrison</u>, 798 So. 2d at 575 (¶ 28). This finding is based on the earliest incarnation of the tort found in <u>Irby v. Citizens National Bank of Meridian</u>, 121 So. 2d 118, 119 (1960). As such, the court found that "the bad faith exception to a privilege defense was nothing more than an allowance for suit based on a finding of malice." <u>Gibson v. Estes</u>, 2008 WL 3884393, at *3 (N.D. Miss. Aug. 13 (2008) (citing to <u>Morrison</u>, 798 So. 2d at 575); <u>see also</u> <u>McBride Consulting Service, LLC v. Waste Management of Miss., Inc.</u>, 949 So. 2d 52, 56 (Miss. Ct. App. 2006) (including the malice definition of prong three). The <u>Morrison</u> court defined malice as "when an intentional act occurs [with] the purpose . . . to cause injury to business without right or good cause. <u>Morrison</u>, 798 So. 2d at 575.

Here, Defendants contend that Plunkett cannot demonstrate the elements of a malicious interference claim. Plunkett, on the other hand, maintains that after he turned off Pittman's electricity due to delinquent payment, Pittman advised him that he would be terminated. According to Plunkett, Pittman also made clear that he should have "special privileges" as a selectman on the Board, which allegedly included not having his power turned off and not being arrested if caught with illegal drugs. Plunkett argues in his brief in opposition to summary judgment that, "Pittman voted on two occasions to terminate [him]. But for Pittman's vote, the mayor could have overridden the [B]oard's vote and [he] would still be working for the City of West Point."[12] Although a close call, given the record in its entirety, the Court finds factual disputes exist as to this claim; therefore, summary judgment is denied.

G. Intentional Infliction of Emotional Distress

In order to establish a claim of intentional infliction of emotional distress under Mississippi law, a plaintiff must establish two elements: (1) conduct on the part of the defendant that is so extreme or outrageous as to go "beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community"; and (2) severe emotional distress. Haun v. Ideal Indust. Inc., 81 F.3d 541, 548 (5th Cir. 1996) (internal quotation and emphasis omitted). For a plaintiff to establish the outrageous conduct element, "[i]t has not been enough that the defendant has acted with an intent which is tortious or even criminal, or . . .

---

[12] As clarification, the Court notes that Plunkett was terminated by the Board on two occasions. On the first occasion, there was a 3-2 vote, with Pittman voting in favor of Plunkett's termination. The mayor can override a 3-2 vote; thus, the mayor vetoed Plunkett's termination. On the second occasion, there was a 4-1 vote, with Pittman again voting in favor of Plunkett's termination. The mayor may not override a 4-1 Board vote. Thus, Plunkett's termination could not be vetoed.

[with] malice, or a degree of aggravation which would entitle the plaintiff to punitive damages for another tort." Id. (internal quotations omitted).

Defendants have moved for summary judgment on Plunkett's claim for intentional infliction of emotional distress asserted against Jasper Pittman. Plunkett entirely failed to address this claim in his response in opposition to summary judgment. Accordingly, the Court determines that Plunkett has abandoned this claim. See, e.g., Black v. N. Panola Sch. Dist., 461 F.3d 584, 588 n.1 (5th Cir. 2006) ("[F]ailure to pursue this claim beyond her complaint constituted abandonment."); Cinel v. Connick, 15 F.3d 1338, 1345 (5th Cir. 1994) ("A party who inadequately briefs an issue is considered to have abandoned the claim."); Vela v. City of Houston, 276 F.3d 659, 679 (5th Cir. 2001); Yohey v. Collins, 985 F.2d 222, 224–25 (5th Cir. 1993); Moore v. Delta Airlines, Inc., 2012 WL 685415, at *5 (N.D. Tex. Mar. 1, 2012) (finding plaintiff abandoned claims not addressed in response to defendant's summary judgment motion). Thus, Defendants' motion for summary judgment as to this claim is granted.

*Plaintiff Joni Lofton*

   A.  Race Discrimination Under Title VII: Failure to Promote

Under Title VII, it is "an unlawful employment practice for an employer . . . to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). Lofton does not seek to prove her case with direct evidence, instead presenting alleged circumstantial evidence and analyzing her claim under McDonnell Douglas Corp. v. Green, 411 U.S. 792, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973). In order to establish prima facie case that Defendant failed to promote

Plaintiff Lofton because of her race, Plaintiff must demonstrate: "(1) she belongs to a protected class; (2) she sought and was qualified for the promotion; (3) she was denied the promotion; and (4) the position she sought was filled by someone outside the protected class." <u>Johnson v. Louisiana ex rel Louisiana Bd. of Sup'rs</u>, 79 F. App'x 684, 686 (5th Cir. 2003) (citing <u>Price v. Fed. Express Corp.</u>, 283 F.3d 715, 720 (5th Cir. 2002) (citing <u>St. Mary's Honor Ctr. v. Hicks</u>, 509 U.S. 502, 506, 113 S. Ct. 2742, 125 L. Ed. 2d 407 (1993)).

Once a plaintiff has made a prima facie case, the defendant then has the burden of producing a legitimate, nondiscriminatory motive for the adverse employment action. <u>Parker v. State of La. Dep't of Educ. Special Sch. Dist.</u>, 323 F. App'x 321, 327 (5th Cir. 2009). The defendant's burden at this stage is merely one of production-not persuasion. <u>Id.</u>

If the defendant can articulate a reason that, if believed, would support a finding that the action was nondiscriminatory, then the inference of discrimination created by the plaintiff's prima facie case disappears, and the factfinder must decide the ultimate question of whether the plaintiff has proven intentional discrimination. <u>St. Mary's Honor Ctr. v. Hicks</u>, 509 U.S. 502, 511-12, 113 S. Ct. 2742, 125 L. Ed. 2d 407 (1993). The plaintiff must present substantial evidence that the employer's proffered reason is a pretext for discrimination. <u>Laxton v. Gap, Inc.</u>, 333 F.3d 572, 578 (5th Cir. 2003). To show pretext on summary judgment, "the plaintiff must substantiate his claim of pretext through evidence demonstrating that discrimination lay at the heart of the employer's decision." <u>Price v. Fed. Express Corp.</u>, 283 F.3d 715, 720 (5th Cir. 2002).

Pretext may be established "either through evidence of disparate treatment or by showing that the employer's proffered explanation is false or 'unworthy of credence.'" <u>Laxton</u>, 333 F.3d

at 578 (quoting <u>Reeves</u>, 530 U.S. at 143, 120 S. Ct. 2097). "To raise an inference of discrimination, the plaintiff may compare his treatment to that of nearly identical, similarly situated individuals." <u>Bryant v. Compass Group USA Inc.</u>, 413 F.3d 471, 478 (5th Cir. 2005). To establish disparate treatment, however, a plaintiff must show that the employer gave preferential treatment to another employee under "nearly identical" circumstances." <u>Id.</u> Alternatively, "[a]n explanation is false or unworthy of credence if it is not the real reason for the adverse employment action." <u>Laxton</u>, 333 F.3d at 578.

In contrast, the Fifth Circuit has modified the <u>McDonnell Douglas</u> formulation to permit proof that discrimination was one motivating factor among others for an adverse employment action. <u>See</u> <u>generally</u> <u>Rachid v. Jack in the Box, Inc.</u>, 376 F.3d 305 (5th Cir. 2004). At one time, the Fifth Circuit required that a plaintiff present direct evidence of discrimination in order to receive the benefit of a mixed-motive analysis. <u>See</u> <u>Fierros v. Tex. Dep't of Health</u>, 274 F.3d 187, 191 (5th Cir. 2001). However, the Supreme Court in <u>Desert Palace, Inc. v. Costa</u> held that Congress's failure to require a heightened burden of proof suggested that courts should not depart from the general rule of civil litigation that "requires a plaintiff to prove his case 'by a preponderance of the evidence,' using 'direct or circumstantial evidence.'" 539 U.S. 90, 99, 123 S. Ct. 2148, 156 L. Ed. 2d 84 (2003) (quoting <u>Postal Service Bd. of Governors v. Aikens</u>, 460 U.S. 711, 714 n. 3, 103 S. Ct. 1478, 75 L. Ed. 2d 403 (1983)). Therefore, a plaintiff asserting a Title VII discrimination claim may utilize the mixed-motive analysis whether she has presented direct or circumstantial evidence of discrimination. <u>Id.</u> at 101, 123 S. Ct. 2148; <u>Smith v. Xerox Corp.</u>, 602 F.3d 320, 327-28 (5th Cir. 2010).

Here, Lofton maintains that she was discriminated against based on her race due to the fact that she was not promoted to the position of office manager. Defendant argues that Lofton cannot demonstrate a prima facie failure to promote claim. Defendant begins by noting that "while it is not disputed that Lofton can establish the first three prongs of a prima facie case, there is a question about her ability to establish the fourth prong." The Court agrees with Defendant. There is a "question" concerning the fourth prong of Lofton's failure to promote action; one of material fact negating the appropriateness of summary judgment.

Defendant concedes that Teresa Moore (African American) was, in fact, ultimately selected for the office manager position. The prima facie case framework "was never intended to be rigid, mechanized, or ritualistic." Furnco Constr. Corp. v. Waters, 438 U.S. 567, 577, 98 S. Ct. 2943, 57 L. Ed. 2d 957 (1978). Instead, "[t]he central focus of the inquiry in a case such as this is always whether the employer is treating some people less favorably than others because of their race, color, religion, sex, or national origin." Id. (internal citations omitted). Further, the Fifth Circuit has noted that in order to establish a prima facie case, a plaintiff "need only make a very minimal showing." Nichols v. Loral Vought Sys. Corp., 81 F.3d 38, 41 (5th Cir. 1996). Defendant has not set forth in its summary judgment motion a legitimate, nondiscriminatory reason concerning Lofton's failure to promote claim. Defendant has also neglected to argue or provide a pretext analysis, and the Court declines to create and insert into the record arguments not urged by Defendant. Accordingly, Defendant's summary judgment motion as to Plaintiff Lofton's failure to promote claim asserted against the City of West Point is denied.

B.  Race Discrimination Under Title VII: Construction Discharge

Under the McDonnell Douglas standard, Plaintiff Lofton must first establish a prima facie case of discrimination by establishing that she was (1) a member of a protected group; (2) qualified for the position she held; (3) that she suffered an adverse employment decision; and (4) either replaced by someone outside the protected group or treated less favorably than employees not in the protected group. Okoye v. Univ. of Tex. Houston Health Sci. Ctr., 245 F.3d 507, 513 (5th Cir. 2001).  Lofton seeks to satisfy the third element by claiming that she was constructively discharged from her employment with the City of West Point. Constructive discharge can form the basis of a Title VII claim. Guthrie v. Tifco Indus., 941 F.2d 374, 377 (5th Cir. 1991).

To establish "constructive discharge," Lofton must offer evidence that Defendant deliberately made her working conditions *so intolerable* that a *reasonabl*e employee would feel compelled to resign. Stover v. Hattiesburg Public School Dist., 549 F.3d 985, 991 (5th Cir. 2008) (internal citations omitted); Dornhecker v. Malibu Grand Prix Corp., 828 F.2d 307, 310 (5th Cir. 1987). Whether a reasonable employee would feel compelled to resign depends on the facts of each case. Id. "Discrimination alone, without aggravating factors, is insufficient for a claim of constructive discharge." Brown v. Kinney Shoe Corp., 237 F.3d 556, 566 (5th Cir. 2001).

Lofton asserts that she was "constantly being harassed by [Teresa] Moore[,]" and that this alleged harassment led to her constructive discharge.  Lofton alleges no other acts or factors, besides the alleged harassment from Moore, contributing to her constructive discharge claim.[13] Lofton testified in her deposition testimony that her claims of harassment are as follows:

---

[13] In determining whether a reasonable employee would feel compelled to resign, the Fifth Circuit has considered the relevancy of the following events:

Q:      The crux of your complaint is that you thought you were being harassed in the workplace. How did you feel that you were being harassed?

A:      I got - - different occasions I would get comments made to me.  One occasion, I had a skirt on. And I got - - that's the only time I remember getting a complaint wrote up against me. I got wrote up for not wearing pantyhose. I never saw in the handbook that we had to wear pantyhose to work.

Q:      And who did the write-up?

A:      Theresa [sic] Moore.

Q:      Okay.

A:      There were other comments made from Theresa [sic] Moore that - - just for - - belittling. Just, you know - - she would make comments saying that I - - I dress very well, you know.  And it just - - I always wore nice dress clothes to work. And it just felt like I was getting picked on every minute about something.

Q:      Okay. Can you give me some specific examples?

A:      On the dress clothes, one day I had a nice dress pants on and striped shirt. And it had like a hoodie on it.

        And she had a - - well, the button up, nice outfit like you have on.  It was very nice. And she just made the comment, you know: "I always dress well. I dress appropriate for work."

---

(1) demotion; (2) reduction in salary; (3) reduction in job responsibilities; (4) reassignment to menial or degrading work; (5) reassignment to work under a younger supervisor; (6) badgering, harassment, or humiliation by the employer calculated to encourage the employee's resignation; or (7) offers of early retirement [or continued employment on terms less favorable than the employee's former status] . . . .

Brown v. Kinney Shoe Corp., 237 F.3d 556, 566 (5th Cir. 2001) (alteration in original) (quoting Brown v. Bunge Corp., 207 F.3d 776, 782 (5th Cir. 2000)).  As noted, in Lofton's brief in opposition to summary judgment, she only discusses factor six: harassment.  She also limits her discussion of such harassment to harassment she allegedly endured from Teresa Moore.  Given this, the Court also cabins its analysis of these factors to Lofton's allegations of harassment from Teresa Moore. See Williams v. Valenti, 432 F. App'x 298, 303 (5th Cir. 2011) (noting that the district court is "not required to search the record in support of evidence supporting a party's opposition to summary judgment").

And I didn't feel like I was not dressed appropriate.

I - - stepping out on a break, she wanted to know where I was going and how long I would be. We were allowed - - allotted 15 minutes for a break.

She never asked any of the other girls or questioned them for coming back late . . .

Q:      . . . Okay. So the comments would be directed to you about where you were going and how long your break was going to be, but not to anybody else?

A:      . . . Uh-huh (affirmative response)

Q:      Were there any other examples of the type of things that you felt were - -

A:      Not - -

Q:      - - harassing?

A:       - - that I could recall offhand. No, ma'am.

Q:      Did anything happen the morning that you resigned?

A:      The morning that I resigned, I - - I just physically and mentally couldn't take - - take it anymore . . .

Q:      . . . Did you ever tell Theresa [sic] Moore that you felt that she was harassing you?

A:      I did not verbally say anything.  I think she picked up on my feelings.

***

Q:      Did you have any concerns with Theresa [sic] Moore's conduct towards you when Shasta Plunkett was still employed?

A:      She - - she would say things and - - and do things. And my - - and this is how I feel. But that would try to push his limits. She would do things to me and try to stir up Shasta. Make him mad . . .

A:      . . . There was one incident that a teller had to leave all of a sudden. And she - - . . .

32

A:      . . .- - asked me to go up there and cashier . . .

A:      . . . I had no drawer to cashier at that time . . . And I said, "How would like me to cashier?" And she told me to go home because I was not obeying her. And Shasta overrided [sic] that saying, "No, she's not going home."

Thus, Lofton's claims of harassment from Moore are as follows: (i) she was reprimanded one time for not wearying pantyhose, (ii) Moore, on a couple of occasions, made comments that were supposedly directed at the way Lofton dressed, (iii) she was once asked to cashier and was told to go home when she informed Moore that she had no cashier drawer, and (iv) Moore asked her where she was going during her break and how long she would be. Moore also allegedly moved Lofton to a different office on one occasion. When asked if there were any other examples of harassment from Moore, Lofton testified that she could not recall any offhand. Further, while Lofton alleges such harassment leading to her ultimate resignation was based on her race, she links none of the aforementioned incidents to the fact that she is Caucasian.

To establish constructive discharge, the plaintiff "must demonstrate a greater severity or pervasiveness of harassment than the minimum required to prove a hostile working environment." Landgraf v. USI Film Products, 968 F.2d 427, 430 (5th Cir. 1992). Lofton has failed to meet such a burden here. Indeed, the Fifth Circuit has found conduct far more egregious than the conduct complained of in this matter was insufficient to establish constructive discharge. See, e.g., Stover v. Hattiesburg Public School Dist., 549 F.3d 985 (5th Cir. 2008) (employee's assertions that she was not provided the same career development opportunities, her complaints of discrimination were not investigated, her supervisor exhibited anger and violence, and that she was excluded from prestigious retreats were not sufficient to support a claim of constructive discharge); Harvill v. Westward Communications, L.L.C., 433 F.3d 428, 440 (5th Cir. 2005)

(employee's assertions that she was treated "rudely and with general hatefulness," that a man she did not know began taking pictures of her, that a meritless racial harassment charge was brought against her, and that a new supervisor was overheard to state that he would receive a bonus if he ran her off were not sufficient to demonstrate harassment so intolerable that a reasonable employee would feel compelled to resign); Brown v. Bunge Corp., 207 F.3d 776, 782-83 (5th Cir. 2000) (affirming summary judgment to employer on constructive discharge where the resigning employee showed he was demoted and had fewer job responsibilities); McCann v. Litton Sys., Inc., 986 F.2d 946, 952 (5th Cir. 1993) (finding no constructive discharge when the plaintiff was given the option—in the midst of a company-wide reduction in force—of either retiring or transferring to a new and "not well defined" position at a 12% pay cut, under the supervision of a man half his age); Jurgens v. EEOC, 903 F.2d 386, 393 (5th Cir. 1990) ("However, without continuing harassment or repeated discriminatory impediment to any advance . . ., dimmed future job prospects based upon the employer's past discrimination in promotions are not alone enough to support a finding of constructive discharge.") (citation omitted); Jett v. Dallas Indep. Sch. Dist., 798 F.2d 748, 752, 755 (5th Cir. 1986) (finding no constructive discharge after the plaintiff was demoted "with much sorrow and humiliation" from his job as high school football coach and transferred to another school), *aff'd in part and remanded in part on other grounds by* 491 U.S. 701, 109 S. Ct. 2702, 105 L. Ed. 2d 598 (1989); Vaughan v. Pool Offshore Co., 683 F.2d 922, 926 (5th Cir. 1982) (African-American employee was not constructively discharged on the basis of pranks, tricks, heavy-handed humor and crude

racial language).  Accordingly, Lofton has failed to establish she was constructively discharged and, for this reason, Defendant's summary judgment motion as to this claim is granted.[14]

C.  Race Discrimination Under Section 1981

As discussed above vis-à-vis Plaintiff Plunkett's § 1981 claim, a § 1981 action cannot be asserted, on its own, against a local government entity; instead, § 1983 is the sole provision for enforcing § 1981 against such defendants. Jett v. Dallas Indep. Sch. Dist., 491 U.S. 701, 735, 109 S. Ct. 2702, 105 L. Ed. 2d 598 (1989). Lofton has failed to pursue a § 1983 claim against the City of West Point; therefore, her § 1981 race discrimination claim must be dismissed. Oden v. Oktibbeha Cnty., Miss., 246 F.3d 458, 463-64 (5th Cir. 2001). Accordingly, Defendant's motion for summary judgment concerning this claim shall be granted.

---

[14] Because the Court has concluded Lofton cannot establish a claim of constructive discharge, the Court need not address Defendant's contention that Lofton failed to exhaust her administrative remedies as to this claim.

## CONCLUSION

For the reasons stated above, Defendants' Motion for Summary Judgment [42] concerning claims brought by Plaintiff Shasta Plunkett is GRANTED in part and DENIED in part:

Defendants' motion is DENIED as to Plunkett's Title VII claims of race discrimination asserted against the City of West Point.

Defendants' Motion is GRANTED as to any Title VII racial discrimination claims Plunkett has asserted against Defendant Jasper Pittman.

Defendants' Motion is DENIED as to Plunkett's Title VII retaliation claim asserted against the City of West Point.

Defendants' Motion is GRANTED as to any Title VII retaliation claims Plunkett has asserted against Defendant Jasper Pittman.

Defendants' Motion is GRANTED as to Plunkett's constitutional claims asserted under both the Due Process Clause and the Equal Protection Clause.

Defendants' Motion is GRANTED as to Plunkett's racial discrimination claims brought under 42 U.S.C. § 1981.

Defendants' Motion is GRANTED as to Plunkett's state-law wrongful discharge action.

Defendants' Motion is DENIED as to Plunkett's malicious interference with employment claim asserted against Defendant Jasper Pittman.

Defendants' Motion is GRANTED as to Plunkett's intentional infliction of emotional distress action asserted against Defendant Jasper Pittman.

For the reasons stated above, Defendant's Motion for Summary Judgment [33] concerning claims brought by Plaintiff Joni Lofton is GRANTED in part and DENIED in part:

Defendant's motion is DENIED as to Lofton's Title VII failure to promote claim.

Defendant's motion is GRANTED as to Lofton's Title VII racial discrimination claim based on constructive discharge.

Defendant's motion is GRANTED as to Lofton's racial discrimination claim brought under 42 U.S.C. § 1981.

**So ORDERED on this, the  _4th____ day of __April_____, 2012.**

/s/  **Sharion Aycock_____**
**UNITED STATES DISTRICT JUDGE**